• Grover, J.
The indictment charged the commission of the crime at the town of Brookfield, in the county of Madison, and within 500 yards of the boundary line between the county of Otsego and the county of Madison. The counsel for the accused moved to quash it because the crime was not charged to have been committed in the county of Otsego. This was properly denied by the court. Section 45 *100 (2 R. S., p. 727) provides that when an offence shall be committed on the boundary of two counties, or within 500 yards of such boundary, an indictment for the same may be found and a trial and conviction thereon may be had in either of such counties. The counsel for the accused insists that, notwithstanding, the indictment should charge the commission of the offence in the county in which it is found. This is error. It is sufficient that it shows jurisdiction in the grand jury by which the indictment is found, over the offence, and the jurisdiction of the trial court to hear and determine it. This is shown by the indictment in this caso]
The motion in arrest of judgment was properly denied. This was based upon an alleged defect in the third count. But the verdict was .general, finding the accused guilty upon all the counts. The indictment contains two counts confessedly good. It is sufficient if it contains one good count. This will sustain the conviction, irrespective of other defective counts.
... , The counsel for the prisoner also excepted to the denial of his motion to quash the third count, or to compel the prosecutor to elect upon which offence therein charged he would proceed. The denial of this motion was not the proper subject of an exception. The accused has not a legal right to have the sufficiency of an indictment, or of any count therein, determined upon motion to quash or set it aside; or to put the prosecutor to an election, when more than one offence is charged, upon which he will proceed. It is in the discretion of the court whether or not to set aside a defective indictment upon motion; and unless the question is free from doubt, the court ought not to do it, but leave the counsel to his demurrer, or motion in arrest of judgment.
But it may be well to determine the sufficiency of this count, as upon a re-trial the question may be raised in a form requiring its determination. The objection made to this count is duplicity, in that it charges two distinct offences —- the one the willfully advising and procuring the deceased to submit to the use of an instrument upon her person, with intent to pro *101 duce her miscarriage; the other willfully advising and procuring her to’ take drugs for the like purpose, by means of which the death of the child, of which she was pregnant, and her own death were effected. Section 1, chapter 181, Laws of 1872, provides that any person who shall thereafter willfully administer to any woman with child, or prescribe for any °such woman, or advise or procure her to take any medicine, etc., or shall use and employ or advise or procure-her to submit to the use and employment of any instrument or other means whatever, with intent thereby to produce the miscarriage of any such woman, unless, etc., shall, in case the death of such woman or of such child be thereby produced, be deemed guilty of a felony, etc. It will be seen that the count charges the use of different prohibited means to perpetrate the crime, the miscarriage of the woman ; and in consequence of some one or all, that the death of the child and woman were effected; charging all as constituting a single felony. The law sanctions this mode of pleading in criminal cases. (1 Bishop’s Crim. Pro., 392; id., 436.)
The counsel for the accused excepted to the ruling of the court admitting evidence of the statement of the deceased, in the absence of the accused, as to what was done at the doctor’s office upon the occasion of a ride she took with him. This ruling is sought to be sustained upon the ground, first, that it was part of the res gestae; and second, that it was competent as the act or declaration of a co-conspirator, while engaged in the purpose of the conspiracy. The case shows that the deceased, in company with the prisoner, left her residence, in his buggy, and was absent several hours; that he brought her back, and she came into the house ; that the prisoner did not come in; that immediately after she come in, in answer to inquiries from her step-mother, she made the statement in question, telling what had been done by the doctor at his office, and how he did it, and exhibited certain medicine which she said the doctor gave her, and stated what he told her as to taking it when her pains came on. In this case the thing done, or res gestee, was at the doctor’s office in *102 another town; and it is clear that its narration by the deceased was no part of that thing. Anything said accompanying the performance of an act, explanatory thereof or showing its purpose or intention, when material, is competent as a part of the act. (1 Greenleaf’s Evidence, 122, §§ 108,108a, 109 and notes.) But when the declarations offered are merely narratives of past occurrences, they are incompetent. (Id., § 110.) That is precisely this case. The declarations given in evidence were a mere statement of what had been done at the doctor’s office, and not any part of what was then done, and therefore no part of the res gestee. See Insurance Company v. Mosley (8 Wallace, 397), where a somewhat elaborate review of the authorities upon this point will be found in the opinions of the judges, and where the doctrine as to what may be regarded as part of the res gestee was certainly carried to its utmost limits by the majority of the court. See the dissenting opinion of Clifford, J., which was concurred in by Nelson, J. The opinion of the majority of the court in that case would not include the statement as part of the res gestee at the doctor’s office. The length of time between the act and its subsequent narration by one of the actors I do not regard as material. The question is, did the proposed declaration accompany the act or was it so connected therewith as to constitute a part of it. If so, it is a part of the res gestee, and competent; otherwise, not.
It is insisted that the statement was competent, as being the declaration of a co-conspirator. The evidence was such as to warrant the conclusion that the prisoner and the deceased had agreed or conspired together to procure the miscarriage of the latter; that in the prosecution of this purpose they went away from the residence of the deceased together, in the buggy of the prisoner. The counsel for the prisoner insists that th deceased was not an accomplice but a victim, and cites Dun v. The People in support of the position. This has no bearin upon the question under consideration. Irrespective of the ethical view of the conduct of the woman, section 2 of the statute makes her acts highly criminal. The perpetration of *103 the crimes prohibited by the- statute may be the subject of a conspiracy, and the female subject of the acts a co-conspirator. The general rule is, that when sufficient proof of a conspiracy has been given to establish the fact prima facie in the opinion of the judge, the acts and declarations of each conspirator in the furtherance of the common object are competent evidence against all. (1 Wharton, 702; 3 Greenleaf’s Ev., 94; 1 Taylor’s Ev., 527.) But to make the declaration competent it must have been made in the furtherance of the prosecution of the common object, or constitute a part of the res gestee of some act done for that purpose. A mere relation of something already done for the accomplishment of the object of the conspirators is not competent evidence against the others. (1 Taylor’s Evidence, 542, § 530.) We have already seen that the statement in question was a mere narration of what had been done. True, she stated that the medicine exhibited was to be taken by her, thereafter, but this was not for the purpose of producing her miscarriage, but to protect her from the danger to be apprehended therefrom. The means to produce the miscarriage, upon the theory of the prosecution, had already been applied. There remained nothing further to be done to effect this object. The conspiracy was therefore ended. Had it been shown that the medicine was to be taken to aid in producing the miscarriage, what was said in respect to it would have been admissible. This was not shown, and the entire statement was inadmissible.
The court also erred in receiving proof of the declarations of the deceased made after she had abandoned all hopes of life. Such evidence is admissible, in cases of homicide,; only where the death of the deceased is the subject of the;, charge, and the circumstances of the death are the subject of the dying declarations. (1 Greenleaf’s Ev., § 156, and cases cited in note; Wilson v. Boerem, 15 J. R., 286.) This is the settled rule, and it is unnecessary to discuss the reasons upon .which it is founded. Applying the rule to this case, the declarations were not admissible. The charge against the prisoner was not homicide in any degree. The crime charged *104 against him is that of persuading the deceased to submit to the use of an instrument upon her person, and to take drugs with intent to produce her miscarriage — in consequence of which the death of the child, and her own, were produced. The death of the deceased was not a necessary ingredient of the crime; that of the child was sufficient to make the offence a felony. The act alleged to have been perpetrated by the prisoner was a crime under the third section of the statute, in the absence of the death of the mother or child. Such death -only increased the degree of the crime and the punishment to be inflicted.
The order of the General Term, reversing the judgment of the -'Oyer and Terminer and ordering a new trial, must be affirmed.
All concur except Rapallo, J., not voting.
Order affirmed.